UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISTIAN N.,<br><br>                                      Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Commissioner of<br>Social Security,[1]<br><br>                                      Defendant. | Case No.:  20-cv-1498-BGS<br><br>**ORDER**<br>**(1) DENYING PLAINTIFF'S**<br>**MOTION FOR SUMMARY**<br>**JUDGMENT and**<br>**(2) GRANTING DEFENDANT'S**<br>**MOTION FOR SUMMARY**<br>**JUDGMENT**<br><br>[ECF 14-15] |

## I.   INTRODUCTION

Plaintiff Cristian N. ("Plaintiff") filed a Complaint seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner" or "Defendant") denial of disability insurance benefits under the Social Security Act, (ECF 1), and the Commissioner has filed the Administrative Record (ECF 13).

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021 and is therefore substituted for Andrew Saul as Defendant. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

Plaintiff's Motion for Summary Judgment seeks reversal of the final decision denying benefits and an order for the payment of benefits or, in the alternative that the Court remand the case for further administrative proceedings. (ECF 14.) Plaintiff argues the Administrative Law Judge ("ALJ") failed to provide clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's testimony. (ECF 14 at 4-16.[2]) The Commissioner's Opposition to Plaintiff's Motion argues that the ALJ provided numerous reasons for discounting Plaintiff's allegations, including the objective medical evidence, Plaintiff's treatment history, Plaintiff's activities of daily living, and that the ALJ also properly relied on the medical-opinion evidence. (ECF No. 15.) Plaintiff did not file a Reply brief.[3]

After careful consideration of the parties' arguments, the Administrative Record and the applicable law and for the reasons discussed below, Plaintiff's Motion for Summary Judgment is **DENIED** and the Commissioner's Cross Motion for Summary Judgment is **GRANTED.**

## II.    PROCEDURAL HISTORY[4]

Plaintiff's applications for disability benefits, alleging disability commencing on January 18, 2018, were denied initially on July 17, 2018 and on reconsideration on October 2, 2018. (AR 57-69 (initially); AR 71-83 (reconsideration).) At Plaintiff's request, a hearing was held before an ALJ on August 2, 2019. (AR 33-56 (hearing transcript), 99-100 (request for hearing).) The ALJ issued an unfavorable decision on September 6, 2019. (AR 21-31.) Plaintiff's request for Appeals Council review was

[2] Unless otherwise noted, the Court cites the CM/ECF electronic pagination for the parties' briefs and the Administrative Record pagination for cites to it.

[3] Plaintiff did file a Notice of New Authority related to the constitutionality of the appointment of the Commissioner of Social Security (ECF 16) that the Court briefly addresses below. (*See* Section V.)

[4] The following procedural history is drawn largely from Plaintiff's summary of the case and Defendant's introduction and procedural background. (ECF 14-1 at 2; ECF 15 at 3.) Because this history is not in dispute, it is only briefly summarized.

denied on June 4, 2020. (AR 2-8 (denial), 175 (request for review).)

## III.    ALJ DECISION

The decision explains the five-step evaluation process for determining whether an individual is eligible for disability benefit and then proceeds through steps one through five of the evaluation process. (AR 21-31.[5]) At step two, the ALJ found Plaintiff had the following medically determinable severe impairments: "neurocognitive disorder secondary to childhood petroleum ingestion; borderline intellectual functioning; and major depressive disorder." (AR 24.) The ALJ found other medically determinable impairments were not severe. (AR 24.)

The ALJ found Plaintiff did not meet a listing at step three, specifically considering listings 12.02, 12.04, and 12.11 and evaluating the "paragraph B" criteria. (AR 24-25.) The ALJ found Plaintiff had moderate limitation as to understanding, remembering, or applying information; mild limitation in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing himself. (AR 24-25.)

In conducting this analysis, the ALJ made findings that identified Plaintiff's reports of difficulties, including with memory and his ability to follow written instructions, (AR 24), and being unable to maintain concentration to complete tasks (AR 25). Then, as to each of these areas and two others—interacting with others and adapting or managing oneself—the ALJ made findings as to what Plaintiff could do in each area with detailed citations of the record. (AR 24-25.)

After clarifying that the "paragraph B criteria" are not a residual functional capacity ("RFC"), the ALJ then assessed the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all

_____

[5] The Court only briefly summarizes the ALJ decision here. Relevant portions of the decision, including discussion of the specific records the ALJ cited and relied on for the decision's findings, are discussed in greater detail below.

exertional levels but with the following non-exertional limitations: noncomplex routine tasks that are goal oriented, can be taught with visual demonstration, and do not require a fast production pace, such as conveyor belt or assembly line jobs; simple work-related decisions; and maintain concentration for two-hour periods with normal breaks in the workday to address lapses in concentration.

(AR 25-26.)

The decision then explains that in making this finding as to Plaintiff's RFC, the ALJ has considered all Plaintiff's symptoms taking into account their consistency with the objective medical evidence and other evidence as well as the medical opinions. (AR 26.)

The ALJ then explains the two-step process to evaluate Plaintiff's symptoms. (AR 26.) The decision identifies the first step as determining if an underlying impairment could reasonably be expected to produce Plaintiff's symptoms. (AR 26.) The ALJ describes the second step as an evaluation of the intensity, persistence and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's functional limitations. (AR 26) The ALJ notes that whenever Plaintiff's statements about the severity of his "symptoms are not substantiated by objective medical evidence, [the ALJ] must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (AR 26.)

The decision summarizes Plaintiff's allegations and testimony as follows:

The claimant alleges disability due to depression, anxiety, borderline intellectual functioning, and neurocognitive disorder secondary to childhood petroleum ingestion. At the hearing, the claimant testified that he experiences depressed and anxious mood, sleep disturbance, short term memory loss, and cognitive deficits. The claimant also testified that these symptoms limit the ability to engage in daily activities that involve short-term memory and adaptive functioning, such as maintaining personal hygiene, preparing meals, managing his medication, traveling, and making plans for himself independently of

his spouse. Furthermore, the claimant testified that he is unable to leave his home without getting lost.

(AR 26.)

The ALJ then finds Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 26.) The decision identifies evidence in the record indicating a history of "depressed mood, sleep disturbance, and cognitive deficits—*i.e.*, forgetfulness as well as difficulty with reading and writing—associated with neurocognitive disorder secondary to childhood petroleum ingestion, borderline intellectual functioning, and major depressive disorder." (AR 26.) The ALJ then finds Plaintiff's testimony inconsistent with the record, making findings as to decreases in the severity of symptoms with treatment and summarizing numerous normal findings in medical reports and a consultive examination. (AR 27.) The ALJ also addresses Plaintiff's daily activities. (AR 27.)

The decision then addresses four medical opinions. (AR 27-28.) The ALJ explains the extent to which each is persuasive based primarily on the degree they are supported by the medical records and consistent with other evaluations of Plaintiff. (AR 27-28.) The decision then finds Plaintiff's spouse's testimony not persuasive because of its inconsistency with Plaintiff's psychological evaluation and results of an intelligence test, as well as conflicting with her hearing testimony that Plaintiff is able to stay home by himself while she is at work. (AR 28.)

Relying in part on testimony from a vocational expert, the ALJ determined at step four that Plaintiff could do his past relevant work as a hospital food service worker or housekeeping cleaner. (AR 29.) The ALJ found, in the alternative, that at step five, there were other jobs in the national economy that Plaintiff was also able to perform: industrial cleaner, laundry worker, and kitchen helper. (AR 29-30.)

**IV.   DISCUSSION**

Plaintiff argues the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of his symptoms. (ECF 14-1 at 4-14.) Plaintiff argues: (1) the ALJ's findings that Plaintiff's treatment had been successful in managing the severity of his symptoms failed to acknowledge that the treatment did not completely resolve or fully manage the severity of his symptoms (*id.* at 6-9); (2) the ALJ's reliance on normal findings in an MRI[6] and a consultive examination did not consider contrary portions of the records or limitations of them (*id.* at 9-11); (3) the ALJ's analysis of Plaintiff's daily activities relied on particular treatment notes to the exclusion of others and did not explain how the activities he could actually do contradict his testimony (*id.* at 11-16).

Defendant argues Plaintiff's symptoms are simply not as severe as Plaintiff claims and the ALJ provided numerous reasons supported by substantial evidence for finding Plaintiff's symptom allegations were not as severe as he asserted. (ECF 15 at 5-10.) Defendant argues the ALJ appropriately relied on: Plaintiff's treatment history, conflicts between Plaintiff's daily activities and his testimony; and numerous medical opinions, unchallenged by Plaintiff, that all found Plaintiff was more capable than he alleged. (*Id.* at 5-10.) Defendant also emphasizes that the ALJ did not find Plaintiff's treatment completely resolved his symptoms as Plaintiff suggests, but instead that they improved with treatment. (*Id.* at 8-9.)

**A.     Applicable Legal Standard**

The ALJ must engage in "a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) ("We have established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited."); *Garrison v.*

---

[6] The Court notes that the report cited by Plaintiff and relied on by the ALJ is from a "CT BRAIN W/O CONTRAST."

*Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)); 20 C.F.R. § 404.1529 (Describing how the Commissioner evaluates symptoms); *see also* SSR 16-3p, 2017 WL 5180304, at *2-3 (Detailing the Commissioner's two-step process for evaluating symptoms).

At the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison*, 871 F.3d at 678.

When the claimant satisfies the first step and there is no determination of malingering by the ALJ, at the second step, "the ALJ must provide 'specific, clear, and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); *Smith v. Kijakazi*, 14 F.4th 1108, 1112 (9th Cir. 2021); *Garrison*, 759 F.3d at 1014-15; *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (citations omitted). Plaintiff accurately indicates, and Defendant does not dispute, the ALJ found that Plaintiff satisfied the first step. (ECF 14-1 at 5; AR 26 ("I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms").)

"[T]he ALJ must identify the specific testimony that he discredited and explain the evidence undermining it." *Lambert v. Saul*, 980 F.3d 1266, 1268 (9th Cir. 2020); *see also Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In assessing a claimant's characterization of their symptoms, the "ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, work record" and "testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which he complains." *Bray v. Comm'n of Soc.*

*Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citations omitted); 20 C.F.R. § 404.1529; SSR 16-3p at *6-8.[7]

Courts "reverse only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). "If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'" *Tommasetti*, 533 F.3d at 1039 (quoting *Thomas v Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. "The 'evidence must be more than a mere scintilla but not necessarily a preponderance.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)); *see also Ahearn*, 988 F.3d at 1115 ("The evidence must be more than a mere scintilla but may be less than a preponderance."). "To determine whether substantial evidence supports the ALJ's determination, we must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion." *Ahearn*, 988 F.3d at 1115 (citing *Mayes v. Massanari*, 276 F.3d 453 459 (9th Cir. 2001)). However, courts "may not reweigh the

---

[7] The Court notes that some cases articulating the analysis under the second step use the term credibility, and SSR 16-3p explicitly removed the term "credibility" from the Commissioner's sub-regulatory policy. However, the Ninth Circuit has explained that SSR 16-3p "makes clear what our precedent already require: the assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo*, 871 F.3d at 678 n.5 (quoting SSR 16-3p). Regardless of the use of the term credibility, the Court's application of Ninth Circuit authority here is consistent with *Trevizo's* explanation of credibility and SSR 16-3p.

evidence or substitute our judgment for that of the ALJ." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)).

### B.    Analysis

Plaintiff's Motion is organized into three main issues: (1) Plaintiff's treatment (ECF 14-1 at 6-9); (2) no abnormality assessed in MRI nor at the consultive examination (*id.* at 9-11); and (3) activities of daily living (*id.* at 11-14). Defendant addresses each of these issues and also raises an additional reason the ALJ decision should be affirmed that was unaddressed by Plaintiff—numerous medical opinions that did not find him as limited as he alleged. (ECF 15 at 7-8, 10.) The Court largely follows this organization of the issues.

### 1.   Objective Medical Evidence[8]

Plaintiff identifies the following errors in the ALJ's analysis of the objective medical evidence: (1) relying on the lack of intracranial abnormality in brain imaging; (2) relying on treatment reports for normal findings without addressing other portions showing only minimal improvement; and (3) cherry picking portions of the consultive examination report. (ECF 14-1 at 9-11.) Defendant counters that the ALJ did not cherry pick the medical evidence relied on. (ECF 15 at 8.) Rather, the ALJ appropriately assessed mild-to-moderate limitations from depression, anxiety, sleep disturbance, and cognitive deficits and identified normal findings indicating Plaintiff was capable of the range of mental functioning assessed in the RFC. (ECF 15 at 6-7, 8 (citing AR 24-29 (ALJ decision) and AR 357, 381, 399, 493-95.)

---

[8] Plaintiff's second issue is "No abnormality assessed in MRI nor at the consultive examination." However, given Defendant raises the objective medical evidence as a reason the ALJ properly relied on for discounting Plaintiff's testimony, the Court addresses both parties' arguments regarding the objective medical evidence in this section.

The ALJ begins the analysis of the objective medical evidence by identifying Plaintiff's allegations of disabling limitation in mental functioning. (AR 27.) This is consistent with the ALJ's summary of his testimony that he was unable to engage in activities "involv[ing] short-term memory and adaptive functioning" and an inability to "leave home without getting lost." (AR 26.) The ALJ then goes on to identify a list of normal findings in brain imaging, mood, affect, intact long-term memory, and ability to follow verbal commands. (AR 27 (citing AR 415 [Ex. 3F at 24], AR 337 [Ex. 14E at 2], AR 381 [Ex. 2F at 3], AR 493-94 [Ex. 8F at 3-4].[9]) The ALJ also relies on a consultive examination report provided by Dr. Whitehead indicating Plaintiff has normal thought processes, normal thought content, adequate general memory, the ability to perform simple mathematical calculations, and is in the borderline range in an assessment of nonverbal intelligence. (AR 27 (citing AR 493-95 [Ex. 8F at 3-5]).) The Court's own review of the records cited by the ALJ indicates that each of them supports the proposition they are cited for and provides substantial evidence in support of the ALJ's finding that they do not support the level of disabling limitation in mental functioning that Plaintiff alleges. *Biestek*, 139 S. Ct. at 1154 (Finding substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citations omitted).

Plaintiff asserts that the ALJ was "simply not qualified to interpret raw medical data in functional terms" as to the finding of no intracranial abnormality. (ECF 14-1 at 9.) However, the ALJ did not interpret Plaintiff's CT scans. The record cited is a radiology report ("CT report") with findings as to numerous areas of the brain followed by a

_____

[9] The ALJ also discusses these findings, among others, earlier in the decision in addressing limitations in: understanding, remembering, or applying information (AR 24-25); concentrating, persisting, or maintaining pace (AR 25); and adapting or managing oneself (AR 24). The ALJ addresses Plaintiff's allegations of difficulty with memory and being unable to follow written instruction as well as his reports of being unable to maintain concentration to complete tasks. (AR 24-25.)

"Conclusion" section that indicates "no intracranial abnormality." (AR 415 [Ex. 3F at 24].) The ALJ appropriately relied on it for that conclusion. (AR 27 ("no intracranial abnormality was revealed by diagnostic imaging of the brain in November 2017.").)

Plaintiff argues the "ALJ fails to identify that a neurologist (Dr. Kristoffer) interpreted the normal brain scan that it is reassuring and therefore was able to create a plan to help [Plaintiff] with his worsening cognitive limitations." (ECF 14-1 at 9 (citing AR 359 [Ex. 1F at 10]).) Plaintiff does not explain why the ALJ was required to discuss Dr. Kristoffer's treatment note interpreting the CT scans or, more importantly, how it would have undermined the ALJ's reliance on this normal finding in the CT report. The Court assumes Plaintiff is arguing this portion of the treatment note was of significance because Dr. Kristoffer also identified the need to address Plaintiff's cognitive deficits. However, as explained below, the ALJ did not find Plaintiff did not have cognitive deficits. (AR 26.) Additionally, as to interpretation of the brain scan, Dr. Kristoffer's treatment note supports rather than undermines the ALJ's quoted conclusion from the CT report. It adds additional positive findings from the CT report, "virtually no atrophy or white matter changes" which Dr. Kristoffer finds "reassuring." (AR 359, AR 415 (CT report).) This interpretation reiterates some of the specific findings from the CT report and, like the ALJ, interprets it favorably. (AR 359.)

Additionally, the lack of explicit acknowledgement that Plaintiff has cognitive deficits in this specific paragraph of the ALJ's decision does not undermine the ALJ's assessment of the objective medical evidence. The ALJ already found "[t]he evidence within the record reflects a history of depressed and anxious mood, sleep disturbance, and *cognitive deficits—i.e.*, forgetfulness as well as difficulty with reading and writing— associated with neurocognitive disorder secondary to childhood petroleum ingestion, borderline intellectual functioning, and major depressive disorder." (AR 26.) The ALJ did not mischaracterize Plaintiff's condition or cherry pick this CT report. The ALJ cited it as a normal finding, along with numerous other normal findings, to support the conclusion that Plaintiff's allegations of disabling limitations in mental functioning were not

consistent with this objective medical evidence. (AR 27.) The ALJ did not indicate Plaintiff had no deficits because of this normal finding, nor was that necessary. Rather, the ALJ indicates his mental functioning is not as severe as alleged because of this and other normal finding in the objective medical evidence. (AR 24-25, 27.)

As to the treatment reports the ALJ cited for normal mood and affect, intact long-term memory, and Plaintiff's ability to follow verbal command's appropriately, Plaintiff seems to argue that the ALJ should not have relied on these findings because the treatment notes also indicated Plaintiff had only minimal improvement in sleep, waking at 3:00 AM, and ongoing depression. (ECF 14-1 at 10.) However, those symptoms do not change that Plaintiff was assessed as having normal mood and affect, his long-term memory was intact, and that he followed commands appropriately. (AR 337 [Ex. 14E at 2], AR 381 [Ex 2F at 3].) If anything, that Plaintiff was suffering from insomnia and depression, but still demonstrated normal mood and affect, intact long-term memory, and the ability to follow verbal commands, might support rather than undermine the ALJ's findings because the findings are still normal despite those remaining issues. Again, the ALJ did not conclude that these findings meant Plaintiff did not suffer from insomnia, depression, anxiety, and cognitive deficits. (AR 26.) The ALJ simply found Plaintiff's allegations of disabling limitations in mental functioning were not consistent with these normal findings in his treatment reports. The lack of support in medical evaluations for a plaintiff's complaint undermines those complaints. *See Morgan*, 169 F.3d at 600 (Approving ALJ's reliance on inconsistency between a plaintiff's complaints and physicians' reports).

The Court is also not persuaded that the ALJ erred in relying on certain findings from Dr. Whitehead's evaluation without discussing the findings cited by Plaintiff. Plaintiff argues the ALJ cherry picked the positive findings supportive of her assessment. (ECF 14-1 at 10.) Plaintiff points to the examination indicating anxious mood with a flat affect showing few signs of emotional expression, Plaintiff's inability to count down from ten to one, and the evaluator's reliance on mathematical calculations instead of

serial threes or sevens. (*Id.* at 10.) Plaintiff also asserts the assessment of adequate general memory conflicted with the memory for designs test where Plaintiff was at the borderline intellect level. (*Id.* at 10.)

Again, the Court is not persuaded that the ALJ was required to explicitly discuss every finding in the evaluation in order to rely on it for the propositions that Plaintiff was "fully alert and oriented with normal thought processes, normal thought content, and adequate general memory during his psychological consultive examination," that the "examination report documents the claimant's ability to perform mathematical calculations," and shows Plaintiff scored in the borderline range on a standardized test of nonverbal intelligence. (AR 27.) The ALJ appropriately relied on findings from a psychologist's report. (AR 28.)

Additionally, to address other points raised by Plaintiff further, the Court is not persuaded the ALJ erred in not specifically discussing Plaintiff's claimed inability to count down from ten. Dr. Whitehead's report indicates "[h]e reports that he was not able to perform a countdown from ten to one." (AR 494 [Ex. 8F at 4].) And then states, "[h]owever, I did not have much confidence that the claimant was putting forth much effort." (AR 494.[10]) While the Court need not speculate, because the ALJ was not required to discuss every detail of the report to rely on it, it is possible the ALJ did not discuss that information because the report itself indicates it might be an unreliable finding.

The Court is also not persuaded the ALJ erred in relying on the report because serial threes and sevens were not part of the exam. (ECF 14-1 at 10.) Although serial threes or sevens might be commonly used for mental status exams, as asserted by

---

[10] In the assessment portion of the report, it indicates "his scores are viewed with a lower level of confidence than in some cases, due to what seemed to be less than full effort such as giving up without trying or just stating that the testing tasks could not be performed, possibly resulting in lower scores than the claimant is truly capable of." (AR 495 [Ex. 8F at 5]).)

Plaintiff,[11] he fails to cite the Court to any authority that would allow this Court to substitute its judgment for that of a psychologist as to what tests should be used. Nor can the Court find the ALJ erred in relying on the report because the psychologist administering the exam decided not to use serial threes or sevens. Additionally, although Plaintiff argues there is a contradiction in the psychologist's assessment of adequate general memory and the borderline intellect level on the Memory for Designs Test (MFD), (ECF 14-1 at 10 (citing AR 493 and 495), the report itself addresses this test and Plaintiff's lack of memory issues. (AR 495). It states, "[h]e performed in the borderline range on the TONI-4 today, with MFD scores consistent with that. Thus, there is no indication of memory problems, since his memory and intellectual abilities are borderline, and this is likely a life-long level of function." (AR 495.) The ALJ did not err in relying on Dr. Whitehead's report for these findings.

Collectively, the ALJ did not err in her reliance on the objective medical evidence cited nor can the Court find the ALJ cherry picked the medical evidence cited to the exclusion of contradictory medical evidence.

### 2. Treatment

Plaintiff asserts that the ALJ's finding that Plaintiff's depression, anxiety, and sleep disturbance decreased in severity with medication and that his cognitive deficits improved and stabilized with management of these conditions is not a clear and convincing reason. (ECF 14-1 at 6-7.) In support of this argument, Plaintiff discusses each exhibit cited by the ALJ. As detailed below, Plaintiff argues the exhibits do not support the ALJ's finding because other portions of each treatment record disclose that the treatment was only partially effective or the ALJ's analysis of them lacked important

---

[11] The website identified in Plaintiff's brief is an abstract of an article reporting on a study of the benefits of standardizing the use of these tests. (ECF 14-1 at 10 n.2.) It also notes the lack of uniform administration has led some to conclude they are not useful. There is nothing that would indicate these tests are required or whether they are better or worse than mathematical calculations.

information. (ECF 14-1 at 6-7 (discussing AR 336 [Ex. 14E at 1], AR 359 [Ex. 1F at 10], AR 380-81 [Ex. 2F at 2-3], AR 427 [Ex. 3F at 36], AR 442 [Ex. 5F at 4]).)

Defendant, relying primarily on the same records Plaintiff addressed, argues the ALJ properly relied on Plaintiff's longitudinal treatment records to conclude treatment was effective in managing the severity of Plaintiff's symptoms. (ECF 15 at 7.) Defendant notes, relying on AR 336, 359, and 381, that Plaintiff began medication in December 2017, just a month before his alleged onset date, and almost immediately reported some improvement. (ECF 15 at 7.) Defendant argues the ALJ was not finding Plaintiff's impairments were resolved by treatment, as Plaintiff suggests. (ECF 15 at 8-9 (Explaining that "the ALJ nowhere found medication cured Plaintiff's mental impairments or otherwise rendered him symptom free.").) Defendant then points out that even with medication, the ALJ found "Plaintiff's neurocognitive disorder, borderline intellectual functioning, and major depressive disorder continued to be severe impairments that rendered him unable to perform more" than the RFC assessed by the ALJ. (ECF 15 at 9 (citing AR 24, 26).) As discussed further below, Defendant does not specifically address Plaintiff's argument regarding AR 442 or AR 487, the June 14, 2018 treatment notes that address Plaintiff's medication change.

Plaintiff argues AR 336, part of a treatment note relied on by the ALJ, indicates that medication helps with his anxiety, but also indicates he still has anxiety and it only partially helps. (ECF 14-1 at 7 (discussing AR 336 [Ex. 14E at 1].) Plaintiff asserts that the ALJ presented the anxiety as completely resolved and this is incorrect given the note indicates medication only partially helps. (ECF 14-1 at 7.) As to two other treatment notes the ALJ cited, Plaintiff acknowledges that they indicate Plaintiff's sleep has improved with medication. (ECF 14-1 at 8 (discussing AR 380-81 [Ex. 2F at 2-3] and AR 427 [Ex. 3F at 36]).) However, he argues, as to AR 380-81 that "[c]onveniently missing from the ALJ's assessment of that treatment note is that although [Plaintiff] stated that the medication has improved his sleeping, it continues to be poor." (ECF 14-1 at 8.) And, as to AR 427, Plaintiff argues the ALJ relied on the subjective portion of the statement

that indicated "its helping." (ECF 14-1 at 8.) Plaintiff also argues AR 359, another portion of a treatment note relied on by the ALJ, did not say that the medication would improve Plaintiff's symptoms to a normal level or that the severity was managed. (ECF 14-1 at 7-8 (discussing AR 359 [Ex. 1F]).) Plaintiff points to the portion of the note that says Plaintiff's "depression and anxiety may result in worsening cognitive deficits due to impairment in attention and concentration." (ECF 14-1 at 7-8 (citing AR 359).)

The Court agrees that the ALJ did not find Plaintiff's symptoms resolved based on these or any other treatment records. In discounting Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms, the ALJ found Plaintiff's "treatment . . . successful in *managing the severity* of the claimant's disabling conditions." (AR 27 (emphasis added).) Then, the ALJ states, [s][pecifically, treatment records reveal that [Plaintiff's] depression, anxiety, and sleep disturbance *decreased in severity* with the use of medication—sedatives and antidepressants—which were first prescribed on December 28, 2017." (AR 27 (citing AR 336-37 [Ex. 14E at 1-2], AR 380-81 [Ex. 2F at 2-3], AR 427 [Ex. 3F at 36]) (emphasis added).)

In this respect, these records are not "conveniently missing" important information related to the medication only helping partially or that sleep is still poor despite helping. As to AR 336, 380-81, and 427, the indications in the treatment notes that Plaintiff still experienced symptoms or that the medication only partially resolved them does not, in isolation, undermine the ALJ's finding that medication managed the severity of his symptoms.

As to AR 359, the language Plaintiff quotes—Plaintiff's "overlying depression and anxiety may result in worsening cognitive deficits due to impairment in attention and concentration"—also does not undermine the ALJ's finding. (ECF 14-1 at 7-8 (citing AR 359 [Ex. 1F at 10]).) Not only is this a forward-looking statement explaining why the physician plans to "address his mood symptoms and insomnia to uncover if any true progressive deficits exist," but it also suggests that decreasing the severity of symptoms is anticipated with medication. (AR 359.) This December 28, 2017 visit appears to be

Plaintiff's first with Dr. Kristoffer. (*Id.*[12]) While it does not indicate improvement, it states his mood symptoms and insomnia are being addressed, conveys the expectation that these symptoms will improve with medication, and identifies this as the point when Plaintiff started receiving medication to treat depression and anxiety. (AR 359 ("Will proceed by treating depression and anxiety. Start citalopram 10 mg po qd x 14 days, the increase to 20mg po qd until next visit . . . Start melatonin 5mg po qhs for sleep").)[13] Although not a record indicating symptoms are already managed or decreasing with treatment, the ALJ did not err in citing it, along with other records, to support these findings.

Plaintiff's argument as to AR 442 is different. Plaintiff argues that it does not support the ALJ's finding because it actually indicates Plaintiff had to stop taking one medication because of a suboptimal response to it and start another. (ECF 14-1 at 8 (discussing AR 442 [Ex. 5F at 4]) and citing AR 487 [Ex. 6F at 31]).) Plaintiff also argues it should not be relied on because it was incomplete and not signed. (ECF 14-1 at 8 (citing AR 441-43).) Overall, Plaintiff argues the ALJ ignored or misstated important evidence in these treatment notes that did not support the ALJ's RFC instead of considering the record as a whole. (ECF 14-1 at 9 (citing *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)).)

This particular treatment note was not explicitly addressed by Defendant. It is not clear if the note is incomplete or a version of it that lacks information provided in a more complete duplicate treatment note for the same visit. (AR 442 [Ex. 5F at 4] (cited by the ALJ), AR 487 [Ex. 6F at 31] (cited by Plaintiff).) Regardless, it does not indicate that Plaintiff has been helped by, seen a decrease in the severity of symptoms, or otherwise

---

[12] The treatment note indicates Plaintiff was referred for "evaluation and management of cognitive changes" (AR 352) and later in the same treatment record indicates "this patient was new to me and my clinic." (AR 368.)

[13] A later treatment record confirms this assessment. (AR 487 ("I believe his [cognitive deficits are] static with apparent worsening due to depression.").

suggest he is benefiting from taking medication with the exception of simply indicating he is taking medication. (AR 442.) However, it indicates that he is switching from one medication to another and identifies a new medication added for sleep. (AR 442.) A different record cited by Plaintiff from the same doctor covering the same visit explains the change. (AR 487.) It indicates that "[u]nfortunately he has had a suboptimal response to citalopram even at 40 mg po qd. It is reasonable to try another SSRI in attempt to obtain a more robust response." (AR 487.) The ALJ does not specifically address the medication change disclosed in the record the ALJ cited (AR 442) or address the reason for the medication change in a treatment record for the same visit, *i.e.* the "suboptimal response" to the existing medication that required a change to "obtain a more robust response." (AR 487.)

These two records alone do not support the ALJ's finding that medication was managing the severity of his symptoms. They indicate only that he was taking medication and it was being changed. (AR 442, AR 359 (December 2017 visit where medications were started).) The question then is whether these records undermine the ALJ's overall finding that medication was decreasing the severity of Plaintiff's symptoms based on the prior treatment records and one subsequent treatment record also cited by the ALJ. "While ALJs obviously must rely on examples to show why they do not believe that a claimant is credible, the data points they choose must *in fact* constitute examples of broader development to satisfy the applicable 'clear and convincing' standard." *Garrison*, 759 F.3d at 1018 (emphasis in original). The records must be sufficient that a "reasonable mind might accept them as adequate to support" the finding that the severity of his symptoms decreased from this treatment. *See Tommasetti*, 533 F.3d at 1038 ("Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (quoting *Thomas*, 278 F.3d at 958).

One interpretation might view AR 487's identification of a suboptimal response to existing medication as casting doubt on the efficacy of all his medications up to that point. Plaintiff's physician found his medication regimen produced a suboptimal response

that required a change could be interpreted as an indicator he was not improving with medication. And as to the subsequent record indicating improvement, it is only minimal, and he still wakes early. (AR 337 [Ex. 14E at 2] ("minimal improvement, sleep still interrupted waking at 3am. Early morning awakenings are consistent with ongoing depression.") However, it also says sleep initiation has improved. (AR 337 ("Zolpidem helps with sleep initiation.")

However, falling short of "optimal" and changing for a "more robust response" does not necessarily mean the treatment up to that point, or even at that point, was not decreasing the severity of his symptoms. As discussed above, the ALJ did not find Plaintiff's depression, anxiety, and sleep disturbance symptoms were resolved; only that the severity was decreased to a manageable level. (AR 27.) These treatment records could mean his doctor simply sought a better outcome. This would be consistent with the physician's explanation that "[i]t is reasonable to try another SSRI in an attempt to obtain a *more robust* response." (AR 337 (emphasis added).) And, as noted above, the treatment record following this medication change, also relied on by the ALJ, while indicating only minimal improvement, does indicate improvement and that the added medication helps with sleep initiation. (AR 337.)

The Court might find one of these interpretations more compelling, but when evidence is "susceptible to more than one rationale interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954; *Ahearn*, 988 F.3d at 1115 (Courts "may not reweigh the evidence or substitute our judgment for that of the ALJ."). Here, the ALJ relied on a series of treatment notes, in the short period of time Plaintiff had been receiving treatment, and overall the ALJ found they showed improvement to a level that decreased the severity of Plaintiff's symptoms. There was no error in the ALJ's conclusion and it is supported by substantial evidence.

### 3. Activities of Daily Living

Plaintiff raises a number of issues with the ALJ's findings regarding Plaintiff's daily activities. (ECF 14-1 at 11-13.) In addition to disputing some findings and the

1   evidence the ALJ relied on, Plaintiff also argues the ALJ should have addressed other
2   evidence not addressed by the ALJ. (ECF 14-1 at 11-13.) Plaintiff also argues the ALJ
3   was required to establish a nexus between the daily activities identified and full-time
4   work. (ECF 14-1 at 12.) Defendant asserts that the ALJ did not find these daily activities
5   were equivalent to the rigors of full-time work, (ECF 15 at 9), but rather reasonably
6   found the degree of limitation alleged by Plaintiff conflicted with his daily activities
7   based on evidence in the record (ECF 15 at 7).

8       An "ALJ [is] permitted to consider daily living activities in his credibility
9   analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see also Molina v.*
10  *Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) *superseded on other grounds by* 20 C.F.R.
11  § 404.1502(a). Daily activities "form the basis for an adverse credibility determination"
12  when: (1) the daily activities meet the threshold for transferable work skills or (2) the
13  daily activities contradict the claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625,
14  639 (9th Cir. 2007); *see also Trevizo*, 871 F.3d at 682. As discussed further below, the
15  ALJ relied on the second here; Plaintiff's daily activities undermined his testimony.

16      Even when a plaintiff's daily activities might be interpreted more favorably, if the
17  ALJ's interpretation is rational, it must be upheld. *Burch*, 400 F.3d at 680-81 ("Although
18  the evidence of [plaintiff's] daily activities may also admit of an interpretation more
19  favorable to [plaintiff], the ALJ's interpretation was rational, and we must uphold the
20  ALJ's decision where the evidence is susceptible to more than one rational
21  interpretation."). If the ALJ's credibility finding is supported by substantial evidence in
22  the record, we may not engage in second-guessing. *See Thomas*, 278 F.3d at 959 (citing
23  *Morgan*, 169 F.3d at 600)).

24      The ALJ found Plaintiff's daily activities "reveal[] that the claimant is able to
25  engage in a level of daily activity and interaction that supports the ability to perform

simple, routine, and noncomplex tasks that are goal oriented, can be taught with visual demonstration, and do not require a fast production pace," *i.e.* the RFC.[14]

Before addressing Plaintiff's specific arguments, the Court notes that the ALJ addressed Plaintiff's daily activities multiple times in the decision. (AR 24-25, 27.) The Court's analysis here focuses primarily on the portion of the decision specifically addressing Plaintiff's testimony. (AR 27.) However, because Plaintiff raises challenges associated with Plaintiff's function report, (AR 240-25 [Ex. 4E]), that the ALJ addressed earlier in the decision, and that analysis also supports the ALJ's findings as to Plaintiff's testimony, some of the Court's analysis relies on the earlier discussion of Plaintiff's daily activities and the function report. In that portion of the decision, the ALJ identifies daily activities that undermined Plaintiff's claims regarding difficulty with memory, (AR 24), and being unable to maintain concentration to complete tasks, (AR 25). The ALJ also found that he had only mild limitations in interacting with others and adapting and managing oneself. (AR 25.)

The ALJ did not err in relying on Dr. Whitehead's evaluation report as to Plaintiff's activities at home or taking public transportation. The psychologist's report, cited by the ALJ, indicates that Plaintiff reported "he can still perform the tasks of picking up and straightening out around the house, taking out the trash, dusting, general cleaning mopping, sweeping, vacuuming, laundry, dishes, and other general household tasks and duties." (AR 493 [Ex. 8F at 3].) "He also indicates he can cook and prepare simple foods, requires no assistance showering, dressing, bathing, toileting, or other

---

[14] The Court notes that if this were the entirety of the ALJ's analysis it would be insufficient because saying only that daily activities are not consistent with the RFC is insufficient. *Schultz v. Colvin*, 32 F. Supp. 3d 1047, 1059 (N.D. Cal. 2014) (citing *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011)). However, as noted above, the ALJ had already explained how Plaintiff's reports were undermined by his daily activities in the earlier portion of the decision. (AR 24-25.) And, as discussed in addressing Plaintiff's challenges, the ALJ goes on to identify daily activities that conflict with his testimony. (AR 27.)

person hygiene activities." (AR 493.) He indicates "he is able to drive and take public transportation." (AR 493.) As to the activities other than driving, addressed separately below, Plaintiff argues these activities do not meet the threshold for a workplace and that evidence a claimant can participate in basic human function is not determinative of disability. (ECF 14-1 at 13 (citing *Orn*, 495 F.3d at 639 and *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989)).) Plaintiff also argues these activities should not have been relied on because he had some difficulty with them and could only do them on his own schedule. (ECF 14-1 at 11, 13.) Plaintiff also asserts the ALJ should have instead relied on his inability to track medical appointments, manage his medication, pay bills, or use a remote. (ECF 14-1 at 12-13.)

Here, as Defendant points out, the ALJ did not find these activities were transferrable to the workplace. (ECF 15 at 9.) Rather, the ALJ found they undermined the degree of limitation Plaintiff alleged. (ECF 15 at 9 (citing AR 24-25, 27).) This is apparent from the ALJ's discussion of them in finding Plaintiff's reports of memory difficulties and being unable to concentrate to complete tasks were undermined by his reports of being able to engage in these activities. (AR 24-25.) It is also evident this was the ALJ's reason for relying on them because most of these activities, *i.e.* maintaining personal hygiene and preparing meals, were listed in the summary of his testimony as things he could not do because of his claimed limitations in short-term memory and adaptive functioning. (AR 26.) These activities conflicted with his testimony as to the severity of his symptoms, and the ALJ was permitted to rely on them to discount his testimony. Nor is the Court persuaded the ALJ erred because Plaintiff could only do these activities on his own schedule. As noted above, they were not relied on as transferrable to a work setting, but as undermining his testimony. Additionally, even where daily activities suggest some difficulty functioning, "they may be grounds for discrediting the claimant's testimony to the extent that they contradict a claim of totally debilitating impairment." *Molina*, 674 F.3d at 1110.

Plaintiff argues the ALJ's analysis is missing discussion of other daily activities (tracking appointments, managing medication, paying bills, and using a remote) arguing these activities have more application in a work setting that those relied on by the ALJ, and then points to Plaintiff's own function report as to his abilities. (ECF 14-1 at 13 (citing AR 353 (treatment note), AR 243-44 (Plaintiff's function report)).) The Court recognizes that the ALJ may not rely on evidence of certain daily activities a claimant can do and ignore other evidence to the contrary. *See Diedrich v. Berryhill*, 874 F.3d 634, 642-43 (9th Cir. 2017) (citing *Gallant*, 753 F.2d at 1456). However, here, the primary evidence Plaintiff points to is Plaintiff's own function report that the ALJ had already discounted in the decision. The ALJ did not ignore this evidence. The ALJ found the daily activities discussed above along with his ability to perform mathematical calculations, carry out test evaluation instructions without major difficulty, complete a standardized test of nonverbal intelligence and score in the borderline range, and demonstrate normal thought processes and the ability to successfully perform mental calculations, undermined his claims in the function report. (AR 24-25.) It is not surprising the ALJ did not address the function report again given the earlier discounting of it. And, as to the additional daily activities the ALJ did not discuss, they do not contradict the ALJ's findings. The ALJ's analysis might have benefited from a discussion of the activities, but they are not contrary to the daily activities the ALJ relied on to discount Plaintiff's testimony.

Plaintiff also challenges the ALJ's finding that Plaintiff could travel independently to medical appointments. (ECF 14-1 at 12 (citing AR 27).) Plaintiff argues first that this is not a transferrable work activity, but also argues the evidence cited is insufficient to support the finding and points to three different appointments where Plaintiff was accompanied by his spouse. (*Id.* (citing AR 492, 411, 352).) Plaintiff also argues there is a significant difference between being able to travel independently to get to appointments and being accompanied to them, but not having the accompanying person come into the room for treatment. (*Id.*)

The ALJ found Plaintiff "is able to travel independently in medical appointments" and cited three records. (AR 27 (citing AR 336 [Ex. 14E at 1], AR 380 [Ex. 2F at 2], and AR 397 [Ex. 3F at 6]).) Each record is a treatment note indicating either that that Plaintiff "returns to the visit unaccompanied," (AR 336) or "presents to the appointment unaccompanied" (AR 397, 380). Plaintiff accurately points out that two, AR 380 and 397, are for the same visit on February 28, 2018. The ALJ's phrasing, "travel independently *in* medical appointments" might suggest the ALJ is finding Plaintiff was able to handle his appointments himself independently not necessarily travel to them alone. However, the Court can understand how Plaintiff has interpreted it as finding actual travel to get to the appointments given the use of the word travel.

Assuming, as Plaintiff does, the ALJ meant Plaintiff could travel to the appointments alone based on these medical records, the ALJ still did not err. Although Plaintiff speculates that he might have been accompanied traveling there and not into the room for his appointment, it would not be unreasonable for the ALJ to conclude he both traveled there independently and went into the room alone based on medical records indicating the claimant was "unaccompanied." Additionally, that it was only two appointments and Plaintiff points to other appointments where his wife was there, does not negate the ALJ's finding. The ALJ is not finding he travels to all his appointments independently, she is finding he is "*able to* travel independently in medical appointments." (AR 27 (emphasis added).) The ALJ did not err in this finding or relying on it to discount Plaintiff's testimony.

Plaintiff also challenges the ALJ's reliance on Dr. Whitehead's report to find Plaintiff could drive. (ECF 14-1 at 11 (citing AR 493 [Ex. 8F at 3].) Plaintiff argues the ALJ should have addressed the function report completed by Plaintiff in which he indicated he did not drive because of a driving incident; an incident he explained more at his hearing. (*Id.* (citing AR 245 [Ex. 4E at 6] (function report), AR 44-45 (testimony).) Defendant counters that the ALJ did not err in relying on Dr. Whitehead's report

1   regarding Plaintiff's ability to drive because Plaintiff reported this ability at his June 6,

2   2018 examination. (ECF 15 at 9 (citing AR 493 [Ex. 8F at 3]).)

3       As noted above, Plaintiff's assertion the ALJ erred by not explicitly addressing

4   Plaintiff's function report is not persuasive given the ALJ had already addressed it at

5   length. However, Plaintiff accurately points out that one of Plaintiff's treatment record,

6   AR 408, also notes his inability to drive, and Plaintiff's testimony regarding a particular

7   incident while driving that stopped him from driving is rather specific.

8       Even assuming the ALJ should have analyzed the conflict between Plaintiff's

9   claim he could not drive and his reports to Dr. Whitehead that he could more thoroughly,

10  any deficiency in not explicitly addressing it is harmless.[15] The extremely limited RFC

11  assessed by the ALJ does not require that he drive. And, the ALJ identifies numerous

12  other daily activities Plaintiff reported engaging in that the ALJ properly relied on to

13  discount his testimony. (AR 26.) As discussed above, the ALJ identifies his ability to

14  independently shower, dress, bathe and take care of personal hygiene activities, prepare

15  simple meals and perform household cleaning chores, such as taking out the trash,

16  dusting, mopping, sweeping, laundry, and washing dishes, and "travel independently in

17  medical appointments" and use public transportation. (AR 27 (citing AR 353 [Ex. 1F at

18  4], AR 493 [Ex. 8F at 3]) .) These findings are from Plaintiff's reports to Dr. Whitehead

19  and a treatment note cited by the ALJ. (AR 27 (citing AR 493, 353).)

20

21

22

---

23  [15] This particular point, Plaintiff's ability to drive, is a closer question than all the other

24  daily activities the ALJ relies on because his claimed inability to drive is supported by
    evidence other than his own claims to the agency through his function report and

25  testimony. (AR 408 (medical note cited by Plaintiff).) The Court is not finding the ALJ
    erred in relying on Dr. Whitehead's report. It clearly indicates that he could drive and the

26  ALJ is permitted to rely on evidence in the record, particularly a psychologist's

27  evaluation. (AR 493.) The close question is whether the ALJ should have discussed his
    inability to drive further given there was more evidence he did not drive beyond his

28  reports to the agency in his function report and testimony.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4.   Identification of Testimony and Evidence Undermining

Plaintiff generally asserts that the ALJ "must specifically identify the testimony she finds not credible and must explain what evidence undermines the testimony." (ECF 14-1 at 6 (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)).) Plaintiff does not expand on this argument other than as to the specific issues already discussed above, however, the Court briefly addresses it further.

The Court agrees that the ALJ is required "to specifically identify the testimony from a claimant [the ALJ] finds not to be credible and . . . explain what evidence undermines this testimony." *Treichler*, 775 F.3d at 1102. ALJs are "not require[d] to perform a line-by-line exegesis of the claimant's testimony, nor [are] they require[d] . . . to draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277 (citing *Treichler*, 775 F.3d at 1103).

Here, the ALJ's analysis of Plaintiff's testimony is sufficient that the Court can determine "the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti*, 533 F.3d at 1039 (ALJ's finding must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."); *see also Treichler*, 775 F.3d at 1103 ("Explaining "the ALJ's analysis need not be extensive" but "must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").

As noted above, the ALJ's summary of Plaintiff's testimony included his testimony that "he experiences depressed and anxious mood, sleep disturbance, short term memory loss and cognitive deficient" that "limit [his] ability to engage in daily activities that involve short-term memory and adaptive functioning such as personal hygiene, preparing meals, managing his medication, traveling, and making plans for himself independently of his spouse." (AR 26.) The ALJ also notes his testimony that "he is unable to leave his home without getting lost." (AR 26.) The ALJ sufficiently identified Plaintiff's testimony.

The decision proceeds through step one of the credibility analysis, finding Plaintiff's impairments could cause the symptoms alleged and citing evidence of "depressed and anxious mood, sleep disturbance, and cognitive deficits" as well as "borderline intellectual functioning and major depressive disorder." (AR 26.) The ALJ then indicates generally that Plaintiff's statements regarding the intensity persistence, and limiting effects of his symptoms are inconsistent with the record because the record evidence establishes Plaintiff "retains the capacity to perform simple, routine, and noncomplex tasks that are goal oriented, can be taught with visual demonstration, and do not require fast production pace," *i.e.* Plaintiff's RFC.[16]

The ALJ then proceeds to provide reasons to discredit Plaintiff's testimony regarding the severity of his symptoms, including as detailed above, Plaintiff's treatment decreasing the severity of his depression, anxiety, and sleep disturbance, the objective medical evidence, and Plaintiff's daily activities. (AR 27.) Each of these are discussed in detail above in addressing Plaintiff's specific challenges. For purposes of this analysis, the ALJ has identified the testimony being discredited and the evidence that undermines it sufficiently for the Court "to determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1103 ("Although the ALJ's analysis need

---

[16] The phrasing of this statement could also have been problematic without the additional analysis that follows (AR 27) and the analysis that preceded it regarding Plaintiff's allegations as to his limitations (AR 24-25). The Ninth Circuit has explained that boilerplate language that discredits "testimony regarding the intensity, persistence, and limiting effects of . . . symptoms *to the extent that testimony [is] 'inconsistent with the above residual functional capacity assessment'*" is error and illogical because a claimant's testimony must be considered in *determining* the RFC. *Laborin v. Berryhill*, 867 F.3d. 1151, 1152-54 (9th Cir. 2017) (emphasis added) (quoting boilerplate language from an ALJ decision and describing it as "put[ting] the cart before the horse."). The language here is different than the prohibited boilerplate language because the ALJ indicates Plaintiff's testimony is being rejected for being inconsistent with the record, however, the ALJ also states that the record supports the capabilities equivalent to the RFC. (AR 27.) Even if it were not different, "[t]he use of this generic language itself is not reversible error" if the analysis is otherwise sufficient. *Trevizo*, 871 F.3d 678 n.6.

not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."); *see also Molina*, 674 F.3d at 1121 (The Court "must uphold [the agency's decision] if the agency's path may reasonably be discerned.").

The Court finds the ALJ provided clear and convincing reasons—objective medical evidence, treatment history, and daily activities—supported by substantial evidence for discounting Plaintiff's symptom testimony.

### 5. Medical Opinions

Plaintiff's Motion for Summary Judgment did not raise any issues with the ALJ's analysis of or reliance on the medical opinion evidence as to Plaintiff's symptom testimony or in arriving at Plaintiff's RFC. However, in Defendant's Cross Motion and Opposition to Plaintiff's Motion, Defendant argues the ALJ properly relied on the medical opinion evidence, noting that no physician found that Plaintiff was more restricted than the RFC assessed by the ALJ. (ECF 15 at 8.) Defendant summarizes the opinions of Dr. Whitehead discussed above, and three additional physician opinions, Dr. Chahal, Dr. Dalton, and Dr. Nissinen, with all of them finding Plaintiff retained the ability to perform a restricted range of work consistent with his RFC. (ECF 15 at 8 (citing AR 27-28 (ALJ discussion of the medical opinions); AR 66-67 (Dr. Chahal); AR 77 (Dr. Dalton); AR 432 (portion of Dr. Nissinen's form completed for Plaintiff's waiver for exception from U.S. citizenship test); AR 495-96 (Dr. Whitehead).) Defendant argues "Plaintiff's failure to address the ALJ's reliance on the medical opinions further warrants affirming the ALJ decision." (ECF 15 at 10.) Defendant argues the RFC assessed by the ALJ was narrowly tailored to accommodate Plaintiff's reported limitations and Plaintiff failed to show that the ALJ was required to include further limitations in his RFC. (ECF 15 at 10.)

The parties in this case followed the briefing schedule set out in the Local Rules that provide for plaintiff's filing of their merits brief within 35 days of the Administrative Record being filed, defendant's opposition 35 days later, and plaintiff's reply 14 days

later. CivLR 7.1.e.6.e). Despite Defendant's argument regarding the medical opinions, Plaintiff did not file a reply addressing this argument.

Although the Court need not reach this issue given the Court is affirming the ALJ decision, the Court notes the issue was raised by Defendant in their cross motion for summary judgment and Plaintiff did not address it despite the option to file a brief in response. Additionally, having reviewed the medical opinions, the Court find the ALJ's RFC was consistent with and supported by the medical opinions.

## V.    Notice of New Authority

After the summary judgment briefing was complete, Plaintiff filed a two-page Notice of New Authority with citation to *Collins v. Yellen*, 141 S. Ct. 1761, 1783-84 (2021). The Notice indicates that *Collins* applies *Seila Law LLC v CFPB*, 140 S. Ct. 2183, 2192 (2020). (ECF 16.)

Plaintiff notes these decisions and an Office of Legal Counsel (OLC) decision "casts significant doubt onto the constitutionality of the appointment of the Commissioner of Social Security." (ECF 16 at 1 (citing *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 45 Op. O.L.C. (July 8, 2021).) Plaintiff indicates that "Andrew Saul held the office of Commissioner of Social Security as the sole person dischargeable only for cause between July 17, 2019 and July 11, 2021" and that Plaintiff "filed this claim on February 8, 2018, participated in a hearing on August 2, 2019, received a decision dated September 6, 2019, and received a denial of request for review dated June 4, 2020." (ECF 16 at 1-2.)

Although not explicitly stated, the Court can deduce Plaintiff is arguing that because Andrew Saul's appointment was unconstitutional, he lacked the authority to issue decisions, like the one issued here, as to eligibility for benefits. The Ninth Circuit addressed this issue in an opinion issued on April 27, 2022. *Kaufman v. Kijakazi*, 32 F.4th 843 (9th Cir. 2022). While the court found the removal provision "violates separation of powers principles," it also found it severable and that a "[c]laimant . . . must demonstrate that the unconstitutional provision actually caused her harm." *Id.* at 849

("[U]nless a claimant demonstrates actual harm, the unconstitutional provision has no effect on the claimant's case.").

Plaintiff has relied only on Andrew Saul being Commissioner at the time decisions were made regarding her claim for disability. (ECF 16 at 1-2.) There is no basis for finding actual harm to claimant from the removal provision. When, as here, "[n]othing in the record suggests any link whatsoever between the removal provision and the claimant's case," the removal provision does not impact the validity of the ALJ decision. *Kaufman*, 32 F.4th at 850.

## VI.   CONCLUSION

Plaintiff's Motion for Summary Judgment is **DENIED** and Defendant's Cross Motion for Summary Judgment is **GRANTED**. The ALJ's decision is affirmed. The Clerk shall close the case.

**IT IS SO ORDERED.**

Dated: September 12, 2022

_____
Hon. Bernard G. Skomal
United States Magistrate Judge